# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| Francis Jude Broussard and<br>Rachel Gremillion Broussard | Civil Action No. 05-0528 |
| versus | Judge Tucker L. Melançon |
| Procter & Gamble Company,<br>The Procter & Gamble Distributing<br>Company, and the Procter & Gamble<br>Manufacturing Company | Magistrate Judge Hill |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Rec. Doc. 19] filed by defendants, Procter & Gamble Company, Procter & Gamble Distributing Company, and Procter & Gamble Manufacturing Company (collectively, "defendant" or "Procter & Gamble"); and a Motion in Opposition to defendant's Motion [Rec. Doc. 21] filed by plaintiffs, Francis Jude Broussard and Rachel Gremillion Broussard. In their Opposition, plaintiffs make a conditional request for additional time to conduct discovery. For the reasons that follow, defendant's Motion will be GRANTED, and plaintiffs' conditional request for additional time to conduct discovery will be DENIED.

## I. Background

On or about February 27, 2004, plaintiffs purchased a ThermaCare Heat wrap ("ThermaCare" or "heat wrap"), an over-the-counter product used for the relief of pain by the generation of heat, at a Walgreen's Drug Store in Abbeville, Louisiana. Rachel Broussard intended to use the ThermaCare Heat wrap, which was manufactured and distributed by defendant, to relieve muscle soreness in her lower back. (*Complaint,* ¶¶ 3-4). On February 29, 2004, Ms. Broussard placed the large/extra-large back/hip wrap on the area of her lower back pain with the dark discs against her skin, and fell asleep. (*Complaint,* ¶¶ 4-5). While Ms. Broussard was sleeping the ThermaCare slipped down to her buttocks, and approximately four hours after applying it she awoke with severe third degree burns on her left buttock. (*Complaint,* ¶ 6).

Ms. Broussard was born with a severe form of spina bifida, myelomeningocele. (*Defendant's Motion*, p. 5). As a result, she has profound, sensory deficits from the L5 level of the lumbar spine down through her waist, buttocks and lower extremities. She also suffers from severe, chronic back pain and poor circulation. *(Id.*). Ms. Broussard had used ThermaCare heat wraps on several prior occasions with no ill effects. *(Plaintiffs' Opposition*, p. 2). She was familiar with the directions/labeling and warnings contained on the ThermaCare

box, pouch and package insert. (*Defendant's Motion*, p. 5).

ThermaCare labeling advertises that the product is for the relief of musculoskeletal pain. (*Defendant's Motion*, p. 5).  When the heat wrap is exposed to the air after removal from its airtight pouch, a chemical reaction occurs that produces therapeutic heat. *Id.*

ThermaCare outer- and inner- packaging and labeling and a brochure-insert provide general instructions and warnings to the users of the potential dangers of ThermaCare. (*Defendant's Motion*, p. 6). The labeling warns users that the product has the potential to cause skin irritations or burns, and instructs "Do not use: On broken or damaged skin...[and] on areas of the body where heat cannot be felt..." *Id.*  The labeling also pertinently instructs that "when using this product," the user should "[p]eriodically check [your] skin: (a) if [your] skin is sensitive to heat, (b) if [your] tolerance to heat has decreased over the years."  The labeling further advises users to consult a physician before use if the user has diabetes, poor circulation, rheumatoid arthritis or is pregnant.  *Id.*  Finally, the labeling cautions that some temporary skin redness after removing the wrap is normal, and "to reduce the risk of prolonged redness in the future we recommend you (a) wear for a shorter period of time, (b) wear looser clothing, (c)wear over a thin layer of clothing." *Id.*

Additionally, the brochure/insert included in the package instructs, beginning with the bold print caption "THE LABEL TALKS ABOUT BURNS - SHOULD I BE CONCERNED?", that some conditions increase the chance that using heat might result in skin irritation or a burn, so precaution should be taken if one's sensitivity to heat has changed over time or if the skin is particularly sensitive to heat. The user is then told to take the following precautions to avoid the increased risk of a burn, as associated with certain named medical conditions: periodically check skin while wearing ThermaCare, wear ThermaCare over a thin layer of clothing instead of directly against the skin, wear ThermaCare for a shorter period of time, adjust ThermaCare periodically to be sure it fits properly and is not bunching or folding. Additionally, all users were told to "check every now and then that the wrap is not bunching or folding and is in good contact with your skin."

On February 16, 2005, plaintiffs brought suit against Procter & Gamble seeking damages pursuant to the Louisiana Products Liability Act (LPLA), LA. REV. STAT. § 9:2800.51, *et seq*., alleging that the ThermaCare heat wrap was unreasonably dangerous in its construction or composition, in its design, because of nonconformity to an express warranty which plaintiffs relied on in using the product, and because of inadequate warning to the dangers of use of the product.

(*Complaint,* ¶¶ 9-13).

Defendant contends that Ms. Broussard used the heat wrap contrary to the instructions and ignored the warnings given for users with certain physical conditions which she suffered by not consulting a physician before use, in placing the product directly on her skin rather than over a thin layer of clothing, and in not checking the position of the product periodically which allowed it to dislocate and bunch up. (*Defendant's Motion*, p. 7).

In the Motion for Summary Judgment and the Opposition thereto, the parties give cursory acknowledgment to each of the four theories of liability under the LPLA, but focus primarily on the adequacy of the warning.[1]  The crux of defendant's argument on summary judgment is that the substantive issues of liability need not be addressed because Ms. Broussard's use of the product was not a "reasonably anticipated use" as defined by the LPLA, thus precluding recovery under the LPLA as a matter of law.  Additionally, defendant asserts that plaintiffs cannot establish their evidentiary burden to their warning, construction or composition, design, or express warranty claims.

---

[1]
The issue of causation is not disputed to the extent that Ms. Broussard's injuries were caused by her use of the heat wrap.

## *II. Summary Judgment Standard*

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[2] *Id.* at 322-23.

---

[2]

Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id*

### III. Law & Analysis

In Louisiana, the LPLA establishes the exclusive theories of liability for manufacturers for damage caused by their products.[3] In order for a claim to be viable under the LPLA, the plaintiff's evidence must show that the product is unreasonably dangerous under one of the four theories of liability set forth in the act: (1) construction or composition, (2) design, (3) adequacy of warning, or (4) failure to conform to an express warranty. LA. REV. STAT. § 9:2800.54(B); La.Rev.Stat. § 9:2800.51 *et seq.*;[4] *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254 (5th Cir. 2002).

As a threshold matter, to recover under any theory under the LPLA, the plaintiff must prove that her damages: (1) were proximately caused by the characteristic of the product that renders it unreasonably dangerous, and (2) rose from a "reasonably anticipated use of the product." See LA. REV. STAT. §

---

[3]

The Louisiana Supreme Court held that the Louisiana Products Liability Act was applicable to all product liability claims arising after September 1, 1988. *Gilboy v. American Tobacco Co.,* 582 So.2d 1263 (La.1991).

[4]

The product is unreasonably dangerous in <u>construction or composition</u> as provided in R.S. 9:2800.55; the product is unreasonably dangerous in <u>design</u> as provided in R.S. 9:2800.56; the product is unreasonably dangerous because an <u>adequate warning</u> about the product has not been provided as provided in R.S. 9:2800.57; or the product is unreasonably dangerous because it does not conform to an <u>express warranty</u> of the manufacturer about the product as provided in R.S. 9:2800.58.

9:2800.54(A); *Kampen v. American Isuzu Motors, Inc.*, 157 F.3d 306, 309 (5th Cir. 1998).

In their Complaint [Rec. Doc. 1], plaintiffs plead each theory of liability,[5] but now on summary judgment they do not asseverate their design and express warranty claims, and fail to present evidence sufficient to meet their burden of proof regarding the construction or composition claim.

Defendant argues that it is not necessary to reach the substantive theories of recovery because plaintiffs cannot sufficiently establish one of the two essential elements discussed above - reasonably anticipated use. "If a plaintiff's damages did not arise from a reasonably anticipated use of the product, then the "unreasonably dangerous" question need not be reached." *Kampen v. American Isuzu Motors, Inc.*, 157 F.3d 306, 309 (5th Cir. 1998); *Carter v. Louisville Ladder Group, LLC,* 2005 WL 3088613, *3 (W.D.La. 2005). Because the issue of

---

[5]

Specifically, plaintiffs allege that the ThermaCare Heat Wrap purchased by plaintiffs was: (1) unreasonably dangerous in construction or composition as the product deviated in a material way from the manufacturer's specifications or performance standard in that it caused third degree burns on Ms. Broussard's buttocks after four hours of continuous use while sleeping; (2) unreasonably dangerous in design and an alternative designs existed for which the safety benefits outweighed the burden on defendants and the utility of the product; (3) defendants failed to use reasonable care to provide an adequate warning of the unreasonably dangerous characteristics of the product; 4) unreasonably dangerous because it did not conform to its express warranty that it could be used while sleeping, which warranty "induced plaintiff to go to bed and sleep with the heat wrap on and injure herself."

reasonably anticipated use is a threshold matter for any claim brought under LPLA, the Court will address that issue first.

### A. Reasonably Anticipated Use

The parties disagree as to whether Ms. Broussard's use of the heat wrap was a reasonably anticipated use. Defendant asserts that Ms. Broussard violated the express instructions and warning on the ThermaCare labeling, particularly those provided for users with certain listed conditions, some of which Ms. Broussard knew that she suffered. Defendant argues that this use in direct contravention to the instructions and warnings removes her use from the legal realm of "reasonably anticipated;" it was reasonable for Procter & Gamble to expect users "whose skin is sensitive to heat, whose tolerance to heat has decreased, and whose circulation is poor" to comprehend and follow the instructions for use, recommended non-uses ("Do Not Use"),warnings and the accompanying precautions.

Correspondingly, plaintiffs rely primarily on the warnings, instructions and generally advertised recommendations for use of the heat wrap to establish that Ms. Broussard's use was reasonably anticipated. Plaintiffs contend that from the language of the instructions and warnings it is apparent that Ms. Broussard's use of the product, should have been by any reasonable person standard, an anticipated

use of the product.

As previously set out, a crucial element of plaintiffs' burden of proof under the LPLA is to show that damage arose from a "reasonably anticipated use" and that there is a link between damages and reasonably anticipated use; if a manufacturer does not reasonably anticipate a plaintiff's use then he owes no duty to that consumer, and is not responsible for any damages caused by misuse. *Kampen v. American Isuzu Motors, Inc.,* 157 F.3d 306, 316 (5th Cir. 1998). Therefore, in order to withstand defendant's Motion for Summary Judgment, the plaintiff must first present evidence establishing the essential elements of reasonably anticipated use.

The standard for reasonably anticipated use is objective and is made from the standpoint of the manufacturer at the time the product was produced. The LPLA defines reasonably anticipated use as "a use or handling of the product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances."[6] La. Rev. Stat. § 9:2800.53(7)*; see Fielder v.*

---

[6]

LPLA's "reasonably anticipated use" standard should be contrasted with the pre-LPLA "normal use" standard. "Normal use" included "all intended uses, as well as all reasonably foreseeable uses and misuses of the product;" including "reasonably foreseeable *misuse* contrary to the manufacturer's instructions." *Kampen v. American Isuzu Motors, Inc.,* 157 F.3d 306, 309 (5th Cir. 1998) (*citing Hale Farms, Inc. v. American Cyanamid Co.,* 580 So.2d 684, 688 (La.App. 2d Cir.1991)(*citing Bloxom v. Bloxom,* 512 So.2d 839, 843 (La.1987))). It is clear that

*Grace Children's Products Inc.,* 2006 WL 725099, *3 (W.D. La. 2006). This requires us to ascertain what uses of its product the manufacturer should have reasonably expected at the time of manufacture. *See Kampen,* 157 F.3d at 309*; Myers v. American Seating Co.,* 637 So.2d 771, 775 (La.App. 1st Cir.1994); *see also* John Kennedy, *A Primer on the Louisiana Products Liability Act,* 49 La.L.Rev. 565, 585-86 (1989).

The Fifth Circuit discussed the breadth of the phrase "reasonably anticipated use," in *Kampen v. American Isuzu Motors, Inc.,* 157 F.3d 306 (5th Cir. 1998).[7] The *Kampen* Court defined "reasonably anticipated" at a level of generality that took into account the risks manufacturer must or should have reasonably contemplated when designing the product and providing warnings for its use. That Court further reasoned that it has consistently defined "use" to include not only the ordinary, intended use of a product, but also some of the

---

by adopting the reasonably anticipated use standard, the Louisiana Legislature intended to narrow the range of product uses for which a manufacturer would be responsible. *See, e.g., Delphen,* 657 So.2d 328 (La. App. 4 Cir. 1995); *Myers,* 637 So.2d 771, 775 (La. App. 1 Cir. 1994).

[7]

In *Kampen*, the plaintiff used an auto jack to raise a car then placed his head and shoulders beneath the car despite a clearly displayed warning "never to get beneath the vehicle when it is supported only by a jack." The *Kampen* Court first determined that the plaintiff was using the jack when he crawled beneath the car and then determined that the manufacturer should not have reasonably anticipated this use at the time of manufacture.

plaintiff's negligent conduct.[8]  *Kampen,* 157 F.3d at 312.  However, as defendant

points out and the *Kampen* Court held, the manufacturer is not responsible for

every conceivable, foreseeable use of its product,[9] and reasonably anticipated use

does not encompass misuses in direct contravention of a warning or where the

danger should have been obvious to the experienced as well as the ordinary,

consumer.[10]  *Frith v. John Deere Co.,* 955 F.Supp. 663 (W.D.La.1996).

---

[8]

Comparative fault remains part of Louisiana products liability law, even though one prerequisite to recovery under the LPLA is that the plaintiff's damages arose from a reasonably anticipated use of the product; a plaintiff's negligent conduct which does not remove his use of the product from the realm of reasonably anticipated uses may nevertheless contribute to cause his injuries, and such negligence will lessen a plaintiff's recovery without barring his right to recover altogether. LSA-R.S. 9:2800.53(7), 9:2800.54, subd. D; *Kampen,* 157 F.3d at 312.

[9]

"It is foreseeable that a consumer might use a soft drink bottle for a hammer, might attempt to drive his automobile across water or might pour perfume on a candle to scent it. If he does, however, the manufacturer of the product should not be and under the LPLA is not liable because the uses in the illustrations are not the sort that a manufacturer should reasonably expect of an ordinary consumer." *Hunter on Behalf of Hunter v. Knoll Rig & Equipment Mfg. Co., Ltd.,* 70 F.3d 803, 807 (5th Cir.1995)(*quoting* John Kennedy, *A Primer on the Louisiana Products Liability Act,* 49 La.L.Rev. 565, 586 (1989)) (Kennedy was a co-drafter of the LPLA.)). The *Hunter* Court held that the consumer did not use a drilling rig racking board in a reasonably anticipated manner because the consumer had been racking the pipes in an "obviously dangerous" manner, contrary to well accepted industry standards and practice.

[10]

In *Myers v. American Seating Co.,* 637 So.2d 771, 775 (La. App.1st Cir.1994)*,* the Louisiana First Circuit Court of Appeal held that, while it is *conceivable* that a person might stand on the rear portion of a folding chair (thereby causing it to jackknife), this would not be a *reasonably anticipated* use given the obvious danger of such a use. The plaintiff driver of a GMC Stepvan could not reach the sun visor from his sitting position in order to pull it down when his vision was impaired, but was required to stand. Plaintiff collided with the vehicle in front of him while he was in the standing position. The defendant manufacturer moved for summary judgment on the issue that plaintiff's use was not reasonably anticipated. The court denied the motion for summary judgment and ruled that plaintiff's "use" was reaching for the sun visor while the car

Recognizing the foregoing authority and that cited by both parties, "reasonably anticipated use" is a term of art, the scope of which is imprecise and lacking set criteria for its application. When determining whether a use was reasonably anticipated, courts have previously considered factors such as: (1) whether the injured party used the product in a manner that was obviously dangerous; (2) what the user was instructed to do and warned not to do with respect to the use of the product; (3) whether the use of the product was expressly warned against in the product's labeling (or operations manual) and the language of that warning; and (4) the sophistication/experience of the user-purchaser. *Hunter v. Knoll Rig & Equipment Manufacturing Co., Ltd.,* 70 F.3d 803, 806 (5th Cir.1995)*; Lockart v. Kobe Steel Ltd. Const. Mach. Div.,* 989 F.2d 864, 866 (5th Cir. 1983); *Laird v. Deep Marine Technology, Inc.,* 2005 WL 22949, *2 (E.D.La. 2005); *Frith v. John Deere Co.,* 955 F.Supp. 663 (W.D. La. 1996).

Based on the record before it, the Court concludes that a reasonable fact-finder could ***not*** find that Rachel Broussard's use of the ThermaCare was such that Procter & Gamble could reasonably anticipate and was ***not*** in a manner reasonable for "an ordinary person in the same or similar circumstances," with the

_____

was in motion and that a reasonable jury could find that the defendant should have anticipated this use.

same or similar medical conditions.

Plaintiffs assert that Ms. Broussard used the ThermaCare within the manner generally proscribed by the instructions and advertising on the product packaging. Plaintiffs reference the labeling on the back of the package that boldly advertises that the product is for "use anytime, day or night, even while you're sleeping," and that it can be worn under clothing. Plaintiffs also rely on the directions that state, "[F]or maximum effectiveness we recommend you wear ThermaCare for 8 hours." Plaintiffs argue in their Opposition that the product labeling indicates that the manufacturer could reasonably anticipate that the ordinary, reasonable consumer might do just what the printed matter suggests and position the heat wrap against one's skin, as per the directions, and go to sleep.

The Court agrees that Ms. Broussard used the heat wrap in accordance with the product's official, intended purpose and general use and that she did not qualitatively misuse the product, however this finding does not end the analysis. As instructed by the Fifth Circuit Court in *Kampen v. American Isuzu Motors, Inc.*, 157 F.3d 306 (5th Cir.1998) and *Lockart v. Kobe Steel Ltd. Const. Machinery Div.,* 989 F.2d 864 (5th Cir.1993)*,* where a product is used in contravention to an express warning cautioning against a use of the product, reasonably anticipated use becomes intertwined with the character, adequacy and effect of the warning,

although an adequate warning will *not* always be dispositive of reasonably anticipated use. However, a warning against product misuse is relevant to assessing what uses of a product a manufacturer should reasonably anticipate. *Kampen,* 157 F.3d at 313; *see also Carter v. Louisville Ladder Group*, *LLC.,* 2005 WL at *5(W.D.La.. 2005)(Drell, J.).

Procter & Gamble's warnings are relevant in determining whether the manner in which Ms. Broussard used the heat wrap was a reasonably anticipated use. The Court now turns its attention to the impact an express warning should have on whether the use of the product is reasonably anticipated and whether other users were performing the same or similar negligent acts that Ms. Broussard engaged in at the time of the accident as to give defendant notice of these uses. *See Kampen,* 157 F.3d at 313; *Carter*, 2005 WL 3088613, *5 (W.D.La.2005).

The case at bar involves a product user with certain medical conditions that are explicitly relevant to the instructions for use and warnings against misuse of the product provided by the manufacturer. Defendant contends that despite her knowledge of her condition and the fact that she read and understood the direction and warnings contained on the ThermaCare labeling, Ms. Broussard did not heed the warnings, took none of the recommended precautions and did not follow the instructions for use and against misuse. The question is then, whether in light of

16

the information provided by defendant to the general consumer, defendant would not reasonably expect an ordinary person in the same or similar circumstances as Ms. Broussard to use the heatwrap as she did.

A manufacturer should not reasonably anticipate that a user will disregard explicit warnings and place herself, in direct contravention of those warnings, in a position of obvious peril. "When a plaintiff misuses a product, in direct contravention of a warning, his use will not be reasonably anticipated unless the plaintiff can show that the manufacturer should have known that the product users were using the [product] in contravention of certain warnings." *Kampen,* 157 F.3d at 317 (*quoting Lockart,* 989 F.2d at 868). If the manufacturer provides the consumer with a clear, direct, written warning ... and that warning expresses that using the product in a specified way is dangerous, *"it is expected that an ordinary consumer would not use the product in contravention of the express warning." Kampen,* 157 F.3d at 313 (emphasis original)(*quoting Lockart,* 989 F.2d at 867).

Both plaintiffs and defendant rely on the labeling as definitive of the reasonably anticipated use of the heat wrap. In considering all of the circumstances surrounding Ms. Broussard's use of the heat wrap, the Court finds that Ms. Broussard could have safely used the product and avoided the injury if she had used it in accordance with the instructions provided by defendent;

however she acted in direct contravention to each of the warnings, instructions and precautions, and as predicted, the failure to follow the recommended uses and precautions resulted in injury. Although Ms. Broussard's actions in relation to the product may not have changed the purpose or physical functioning of the product, by disregarding the express warnings and instructions, her actions increased the risk of injury associated with the product and moved her use outside the realm of reasonably anticipated. Ms. Broussard's use of the heat wrap may have been a conceivable, foreseeable use of the heat wrap, but in light of the warnings and instructions it was not a reasonably anticipated use as that concept has been defined. As defendant stated, "Rachel Broussard simply was not at liberty to use ThermaCare the way a consumer without myelomengocele would, and hence her manner of use was not a reasonably anticipated use." (*Defendant's Motion*, p. 13).

The final inquiry related to reasonably anticipated use is whether defendant knew or should have known that the product was being used in contravention of the warnings. *Carter v. Louisville Ladder Group*, *LLC,* 2005 WL 3088613, *6 (W.D.La. 2005) As noted above, if a manufacturer knows or should know that users are disregarding the warnings when using the product, that prohibited use is considered to be a reasonably anticipated use. *Kampen,* 157 F.3d at 317.

Plaintiffs have presented no evidence indicating that other users engaged in the same negligent conduct as Ms. Broussard did, nor evidence that, if such negligent conduct occurred, defendant knew or should have known of it. Without any evidence the Court is unable to conclude that defendant should have expected Ms. Broussard or other users to use the product in contravention of the warnings; thus, the plaintiffs fail to meet the burden imposed on them by the LPLA. *Kampen* at 314 -315; *Carter,* 2005 WL at 6.

The record before the Court establishes that there is not a genuine issue of material fact as to whether Ms. Broussard's use of the ThermaCare was such that Procter & Gamble could reasonably anticipate and expect "an ordinary person in the same or similar circumstances," - with the same or similar medical conditions - to use the product. As plaintiffs have failed to establish reasonably anticipated use, their claims fail at the threshold. Even assuming *arguendo* that plaintiffs had established reasonably anticipated use, their claim would still be dismissed on summary judgment because plaintiffs have not presented sufficient evidence to support their burden to the substantive theories of adequacy of warning, construction or composition, design and express warranty claims.

## B. Adequacy of the Warning

Whether a particular warning was adequate is usually a question for the trier of fact. *Perez v. Michael Weinig, Inc.,* 2005 WL 1630018 (W.D.La. 2005); *Bloxom v. Bloxom,* 512 So.2d 839, 844 (La. 1987); *Black v. Gorman-Rupp,* 655 So.2d 717 (La.App. 4 Cir. 1995). In this case, it is undisputed that Procter & Gamble owed a duty to warn of the known risks of using its product. It is also undisputed that the defendant did provide warnings. Thus, the question before the Court is whether there is a genuine issue of fact for trial on the adequacy of the warnings.

The LPLA defines "adequate warning" as "a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made." LSA-R.S. 9:2800.53(9). Notably, this definition contains both a warning component and an instruction component; courts applying the LPLA have noted that even when a product is not defective, a manufacturer may have a duty to instruct reasonably foreseeable users of the product's safe use. *Krummel v. Bombardier Corp.,* 206 F.3d 548, 551 (5th Cir. 2000); *Swope v. Columbia Chemicals Co.,* 281 F.3d 185, 207, n. 75 (5th Cir.

1989).

To recover under the theory of failure to warn, the plaintiffs bear the burden of establishing that: (1) "the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product;" and (2) that the failure to do so proximately caused the claimant's injuries. LPLA §§ 2800.54 and 2800.57; *Krummel v. Bombardier Corp.*, 206 F.3d 548, 557 (5th Cir. 2000). In the case at bar, neither party contests that the Therma- Care heat wrap has a potentially damage-causing characteristic (i.e., burns). The parties only dispute whether Procter & Gamble used reasonable care to provide adequate warnings regarding this characteristic.

Defendant argues that the product labeling provides adequate instructions on the appropriate use of the heat wrap and expressly warns of the product's potential to cause skin irritations or burns if certain precautions are not taken. Defendant also points out that the outer- and inner- labeling and brochure insert includes special instructions and warnings for users with certain physical conditions. Defendant contends that Ms. Broussard read and was familiar with the provided warnings and instructions, and she violated them anyway. Defendant argues that there is no reason to expect that different or additional warnings would

have generated more compliance or safer behavior on the part of Ms. Broussard, and that the consumer has a responsibility to act reasonably in relation to the labeling for the warnings and instructions to be effective.

Plaintiffs simply respond that the provided warnings and instructions were not adequate to alert the user to the severity of the potential danger of the product, namely the potential for the third-degree chemical burns experienced by Ms. Broussard. They contend that the warnings and instructions were confusing and contradictory and that the necessity of the precautions was not clear. Plaintiffs aver that the facts of this case and the labeling on the outside of the package, the inner pouch and the package insert are sufficient to establish that the reasonable person reading the provided instructions and warnings would not reasonably anticipate the severity of the potential danger from use of the heat wrap to which she was exposing herself.

A "mere allegation of inadequacy" is insufficient for a plaintiff to survive summary judgment on a failure-to-warn claim. *Stahl v. Novartis Pharmaceuticals Corp.,* 283 F.3d 254 (5th Cir. 2002). Plaintiffs' sole evidence is the product labeling itself and self-serving affidavits that if Ms. Broussard knew the heat wrap could cause the type of burn she suffered then she would not have used it. Plaintiffs have not offered evidence of what warning Procter & Gamble should

have provided or how such a warning would have prevented Ms. Broussard's injuries. Therefore, even if the Court had found that Procter & Gamble failed to use reasonable care to provide an adequate warning of the severity of danger, plaintiffs' adequacy of warning claim under the LPLA would still fail on summary judgment because they have failed to support their burden of proof as to the element of causation - that, but for the inadequate warning, Ms. Broussard would not have used the product at all or in the manner that she did, and thus would not have been injured. *Willett v. Baxter Int'l,* 929 F.2d 1094, 1098-99 (5th Cir. 1991); *Grenier v. Medical Engineering Corp.*, 243 F.3d 200, 205 (5th Cir. 2001). Thus, plaintiffs' conclusory assertion that Ms. Broussard was harmed by an inadequate warning must fail.

A reasonable fact-finder could not conclude that defendant failed to adequately instruct plaintiffs as to the proper use of the heat wrap and to warn the plaintiffs of the severity of the potential danger. Plaintiffs have not submitted competent evidence to raise a triable issue of fact as to whether the defendant's failure to warn of the full extent and severity of the potential danger was the cause of plaintiffs' injury.

### B.    Construction or Composition

In moving for summary judgment, defendant argue that plaintiffs have not

submitted a "shred of evidence" to support their defective manufacture claim.

Under the LPLA, "[a] product is unreasonably dangerous in construction or composition if, at the time the product left the manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La.Rev.Stat. 9:2800.55; *Tucker v. Dick Flick, Inc.,* 1996 WL 125933, *2 (E.D.La.1996).

Plaintiffs have offered absolutely no summary judgment evidence - fact or expert - of any alleged defect or that the device in question deviated in any respect from the manufacturer's specifications or the product's intended composition. Mere evidence that the product could cause burns, as taken from the warning on the packaging of the product, "ThermaCare has the potential to cause...burns," is insufficient to establish a defect in composition or construction. There is no presumption that a defect in composition or construction exists merely because an injury occurred. *Brown v. Stenograph Corp.*, 2001 WL 648966, *3 (M.D.La. 2001); *Sittig v. Louisville Ladder Group LLC.,* 136 F. Supp. 2d 610, 613 (W.D. La. 2001); *Pipitone v. Biomatrix, Inc.,* 2001 WL 56861, *8 (E.D. La. 2001); *Jaeger v. Automotive Cas. Ins. Co.*, 682 So.2d 292 (La.App. 4 Cir.1996), *writ denied,* 688 So.2d 498 (La.), *reconsideration denied,* 691 So.2d 72 (La.1997).

24

### C.    Design

As with the composition claim, plaintiffs have not submitted sufficient evidence to support their design defect claim. In order to show that a product is unreasonably dangerous in design, the plaintiffs must show that: (1) there existed an alternative design for the product that was capable of preventing the claimant's damage; and (2) the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. La.Rev.Stat. 9:2800.56.  *See Morgan v. Gaylord Container Corp.,* 30 F.3d 586 (5th Cir. 1994).

Plaintiffs failed to submit any evidence that an alternative design exists or that Ms. Broussarcd's injuries would have been prevented by use of the alternative design as required by La.Rev.Stat. 9:2800.56(a).  An unreasonably dangerous design will not be presumed simply because injury occurred; rather, the plaintiff must come forward with scientifically viable evidence to show that the alternative design would have prevented her injuries. *Miles v. Olin Corp.,* 922 F.2d 1221, 1226 (5th Cir. 1991); *McCarthy v. Danek Medical, Inc.*, 65 F.Supp.2d 410 (E.D.La. 1999); *Tucker v. Dick Flick, Inc*. 1996 WL 125933, *3 (E.D.La. 1996). Furthermore, plaintiffs failed to present any evidence of the second factor required

25

by La.Rev.Stat. 9:2800.56(b) - that the risk avoided by using the alternative design would have exceeded the manufacturer's burden of switching to the alternative design.

There is a complete dearth of evidence about an alternative design and about the risk/utility balancing.

### D.    *Express Warranty*

The LPLA defines an "express warranty" as a representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance. La.Rev.Stat. Ann. § 9:2800.53(6).  Section 9:2800.58 of the LPLA provides that a product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue.

Plaintiffs have advanced no argument nor evidence on this issue. Plaintiffs' allegations are conclusory without any supporting evidence that any express warranties were made to plaintiffs concerning the heat wraps.  Therefore it is not

necessary to consider the substantive questions.[11]

## IV. Plaintiffs' Conditional Request for Additional Time to Complete Discovery

Plaintiffs include at the end of their Opposition to defendant's Motion a request for additional time to complete additional discovery and submit additional evidence, "*if the Court feels defendants' Motion has any merit.*" (*Plaintiffs' Memorandum*, p. 11)(emphasis added). Although plaintiffs do not expressly invoke the protection of Federal Rule of Civil Procedure 56(f), that rule provides the appropriate guidance and authority for the Court's consideration of plaintiffs' collateral request.

Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Rule 56 does not explicitly require that any discovery take place before summary judgment can be granted; if a party cannot adequately defend such a motion, Rule 56(f) is his remedy. The protection afforded by Rule 56(f) is an alternative to a

---

[11]

To survive summary judgment, a plaintiff is required to demonstrate, or provide evidence to create a genuine issue of material fact regarding the following: (1) the manufacturer made an express warranty regarding the product, (2) the plaintiff was induced to use the product because of that warranty, (3) the product failed to conform to that express warranty, and (4) the plaintiff's damage was proximately caused because the express warranty was untrue. La.Rev.Stat. Ann. § 9:2800.58; *Caboni v. General Motors Corp.,* 278 F.3d 448, 455 (5th Cir. 2002).

response in opposition to summary judgment under Rule 56(e) and is designed to safeguard against a premature or improvident grant of summary judgment.

To obtain a Rule 56(f) continuance in order to conduct further discovery prior to a ruling on a motion for summary judgment, the nonmovant must present specific facts explaining his inability to make a substantive response as required by Rule 56(e) and by specifically demonstrating how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact. "The nonmovant may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285-86 (5th Cir. 1985)(citations omitted). "The purpose of Rule 56(f) is to provide nonmovants with a much needed tool to keep open the doors of discovery in order to adequately combat a summary judgment motion." *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir.1992).

The Fifth Court has recognized that "a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment." *Paul Kadair, Inc. v. Sony Corp. of America,* 694 F.2d 1017, 1030 (5th Cir. 1983); *see also Walters v. City of Ocean Springs,* 626 F.2d 1317, 1321 (5th Cir.1980); *Cf.*

28

*First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253 (1968) (limitations on general pre-trial discovery and denial of further Rule 56(f) discovery not improper as additional discovery would merely amount to a fishing expedition and would unduly harass defendant); *Aviation Specialties, Inc. v. United Technologies Corp.,* 568 F.2d 1186 (5th Cir.1978). In *Wichita Falls,* the Fifth Circuit set out four requirements that a non-movant must satisfy to receive a continuance under rule 56(f). First, he must request extended discovery before the court rules on summary judgment. Second, he must put the court on notice that further discovery relating to the summary judgment motion is being sought. Third, he must show how the requested discovery relates to the summary judgment motion. Fourth, he must have acted in a diligent fashion so as not to have put himself in the current position through inaction. *Id.*[12]

The scheduling order provided that discovery was to be concluded by May 22, 2006. If defendant refused to present relevant discoverable information, plaintiffs had ample time to file motions to compel before the defendant filed its Motion for Summary Judgment, which coincidentally was on the cut off day for

---

[12]

Based on plaintiffs' Memorandum in Opposition and Statement of Disputed Facts, the Court will consider the instant motion and opposition thereto under Rule 56(f). Even if Rule 56(f) does not apply, it is within the Court's discretion to allow a party additional time for discovery to defeat a motion for summary judgment *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 28 F.3d 1388, 1395 (5th Cir.1994).

filing dispositive motions. Defendant did not file the Motion for Summary Judgment prematurely or before discovery concluded.  Plaintiffs have not brought any demonstration of outstanding discovery to the Court's attention prior to their Motion in Opposition.  Additionally, the Court has not received notice that further discovery relating to defendant's summary judgment motion is currently being sought, nor sufficiently shown how any future discovery might relate to the summary judgment motion.

Based on the foregoing, the Court finds that plaintiffs have not presented specific facts explaining their inability to make a substantive response as required by Rule 56(e) or  specifically demonstrating how postponement of a ruling on the motion will enable them, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.  Accordingly, plaintiffs' request will be denied.

### V. Conclusion

For the foregoing reasons, defendant is entitled to summary judgment. Accordingly, defendant's Motion for Summary Judgment will be GRANTED, and plaintiffs' conditional request for additional time to conduct discovery will be DENIED.